# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERNON HILL, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-CV-1605 |
| | : | |
| CO BOGAN, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**MCHUGH, J.**                                                                                                                   **MAY 31, 2018**

      Plaintiff Vernon Hill, a prisoner at SCI-Graterford proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983 challenging discipline he received for fighting. In a Memorandum and Order docketed April 27, 2018, the Court granted Hill leave to proceed *in forma pauperis* and dismissed his Complaint for failure to state a claim. (ECF Nos. 5 & 6.) The dismissal of Hill's Complaint was without prejudice to him filing an amended complaint. Hill filed an Amended Complaint, which is currently pending before the Court. For the following reasons, the Court will dismiss Hill's Amended Complaint with prejudice.

## I.     FACTS

      Hill's initial Complaint named the following employees of SCI-Graterford as Defendants in this case: (1) Correctional Officer Bogan; (2) Correctional Officer R. Getz; (3) J. Yodis, a hearing examiner; (4) O. Nunez, a unit manager; (5) J. Terra; (6) J.H. Dupont, Chief Hearing Officer; (7) Cynthia Link, the former Superintendent; (8) Mascilino, a "Captain/Lieutenant;" (9) J. Gery; and (10) John/Jane Does. Hill alleged that, on December 12, 2017, Officer Getz "alerted the Day Captain Office that Hill was fighting in the fieldhouse" with another inmate,

1

identified as McClennan. (Compl. ECF No. 2, at 6, ¶ 12.)[1] Hill, who was employed as a basketball referee at the time, contended that he stopped a basketball game to prevent McClennan from fighting with another inmate, so McClennan swung at him instead. Hill claimed that he did not fight back because he did not want to adversely affect his upcoming parole hearing.

Hill alleged that Getz is "known for issuing Black and Hispanic Prisoner misconduct reports based upon their skin color and in a discriminatory fashion." (*Id.* at 6, ¶ 14.) Hill also alleged, however, that Getz did not issue misconducts to him or McClennan as a result of the incident, and noted that Getz also did not escort them to the medical department, which "is the normal procedure for when two or more Prisoners are captured fighting." (*Id.*) Instead, Officer Bogan prepared a misconduct report, charging Hill with fighting. "Bogan alleged that at approximately 1850 hrs. Getz did in fact observe inmate V. Hill #DK9860 and inmate McClennan #LY5365 physically throwing closed fist punches as each other's faces, inside the fieldhouse." (*Id.*)

Hill appeared before Hearing Examiner Yodis, who found him guilty of fighting based on Officer Bogan's misconduct report, even though Officer Bogan did not personally observe the fight. Hill had requested review of a videotape but was informed that no videotape of the fight existed. Hill's Complaint reflected his belief that Yodis found him guilty on the basis that he had previously been found guilty of fighting on two prior occasions. As a result of the infraction, Hill lost his job as a basketball referee and received thirty (30) days in disciplinary custody.

Hill appealed his disciplinary sentence to the Program Review Committee, which consisted of Defendants Nunez, Gery, and Terra. However, the Program Review Committee

---

[1] The Court uses the pagination assigned to the Complaint by the CM-ECF system.

denied his appeal.  Hill also appealed to the Facility Manager, the Chief Hearing Examiner, and Superintendent Link claiming that he was innocent of the disciplinary charge, but his appeals were unsuccessful.

In his Complaint, Hill claimed that he was improperly found guilty of fighting and that "each Commonwealth Defendant imposed a punishment and sanctioned [him], which may very well effect [sic] his upcoming parole chances based upon an event that never occurred, [and] was racially and discriminatory motivated." (*Id.* at 8, ¶ 22.)  Hill sought damages, pursuant to 42 U.S.C. § 1983, apparently for violation of his "First, Fifth, Eight[h], Ninth and Fourteenth Amendment rights under the United States Constitution." (*Id.* at 9.)

After granting Hill leave to proceed *in forma pauperis*, the Court screened the Complaint under 28 U.S.C. § 1915(e)(2)(B), and determined that the Complaint failed to state a claim.  In particular, the Court concluded that: (1) nothing in Hill's Complaint implicated the First Amendment; (2) Hill failed to state a claim under the Fifth Amendment because none of the Defendants are federal actors; (3) Hill failed to state an Eighth Amendment violation because the punishment in question did not deprive him of basic necessities or represent a dramatic departure from accepted conditions of confinement; (4) the Ninth Amendment did not support a claim based on the discipline imposed upon Hill; (5) Hill failed to state a due process claim or equal protection claim under the Fourteenth Amendment.  With regard to Hill's due process claims, the Court observed that he had not identified a liberty interest based on the loss of his referee position, his thirty-day sentence in disciplinary custody, and his speculative suggestion that his chances for parole could be affected by the allegedly improper discipline.  The dismissal of Hill's Complaint was without prejudice to amendment.

Hill returned with an Amended Complaint naming the same Defendants with the exception of Officer Getz. The Amended Complaint is based on the same underlying facts as the initial Complaint. Hill alleges that Bogan, at the direction of Mascilino, prepared a misconduct report charging him with fighting even though neither of those individuals observed the fight. Hill again alleges that the accusation was false and notes that the underlying incident was not captured on video tape. Nevertheless, Yodis found him guilty based solely on the misconduct report and sentenced him to thirty (30) days in disciplinary custody and the loss of his job as a basketball referee. Hill's appeals of the disciplinary sanction were rejected by the other Defendants at every level. Hill attached to his Amended Complaint documentation confirming that he challenged the discipline he received to the final review under prison policies, but was unsuccessful in his appeals.

The Amended Complaint alleges that in initiating disciplinary proceedings, imposing disciplinary sanctions, and upholding the results of the disciplinary proceedings, the Defendants "attempt[ed] to effect [sic] the outcome of [Hill's] upcoming parole hearing that will determine whether [he] is released from prison . . . ." (Am. Compl. ECF No. 7 at 1.) In that regard, Hill claims that as a "direct result" of the "bogus misconduct report," Superintendent Tammy Ferguson "denied [him] the prison's needed approval for his upcoming parole hearing even though [he] told her the incident never occurred." (*Id.*) He also alleges that the report remains in his disciplinary file, and thus could affect administrative decisions related to his custody status, including eligibility for parole hearings and pre-release status or other "privileges." (*Id.* at 2.) The Amended Complaint pursues claims under the Fifth, Eighth, Ninth, and Fourteenth Amendments, although it focuses heavily on allegations and arguments that Hill's due process rights were violated.

4

## II. STANDARD OF REVIEW

As Hill is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies. That provision requires the Court to screen the Amended Complaint and dismiss it if, among other things, it fails to state a claim. To survive dismissal, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* As Hill is proceeding *pro se*, the Court is obligated to construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Hill has again failed to establish a plausible constitutional violation.

### A. Fifth Amendment Claims

As previously explained to Hill, he lacks a basis for a claim under the Fifth Amendment because none of the Defendants are federal actors. *See Mutschler v. SCI Albion CHCA Health Care*, 445 F. App'x 617, 621 (3d Cir. 2011) (per curiam) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)); *Basile v. Elizabethtown Area Sch. Dist.*, 61 F. Supp. 2d 392, 403 (E.D. Pa. 1999). Accordingly, Hill has not stated a Fifth Amendment claim.

### B. Eighth Amendment Claims

Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively,

sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* Again, as the punishment in question did not deprive Hill of basic necessities nor represent "'a dramatic departure from accepted standards for conditions of confinement'" Hill has not stated a basis for an Eighth Amendment claim. *See McDowell v. Litz*, 419 F. App'x 149, 152 (3d Cir. 2011) (per curiam) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003)) (holding that 90-day suspension of telephone privileges and loss of institutional employment as a result of disciplinary sanction did not violate the Eighth Amendment).

### C. Ninth Amendment Claims

Hill's Ninth Amendment claims fail for the same reasons they failed previously. Courts have generally rejected Ninth Amendment claims raised by prisoners based on complaints about prison conditions, and the Court is not aware of any authority that would provide for a Ninth Amendment claim based on the facts pled by Hill. *See Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam) ("Although there is some authority for the proposition that the Ninth Amendment is a source of fundamental rights . . . no court of which we are aware has held that the Ninth Amendment establishes a right to choose one's cellmate." (internal citation omitted)); *Bisby v. Dir., TDCJ-CID*, No. 6:10CV358, 2011 WL 65974, at *1 (E.D. Tex. Jan. 7, 2011) (rejecting claim where prisoner was "complaining of a violation of his rights under the Ninth Amendment, because he was given a disciplinary case for exercising his right of self-

defense"); *Muniz v. Goord*, No. 9:04-CV-0479, 2007 WL 2027912, at *9 (N.D.N.Y. July 11, 2007) (collecting cases).

### D. Fourteenth Amendment Due Process Claims[2]

"[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). Hill has again failed to identify a liberty or property interest that would trigger due process protection.

The primary addition to the Amended Complaint is Hill's allegation that as a "direct result" of the "bogus misconduct report," Superintendent Tammy Ferguson "denied [him] the prison's needed approval for his upcoming parole hearing even though [he] told her the incident never occurred." (Am. Compl. ECF No. 7 at 1.) It is well-settled, however, that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Moreover, the existence of a state parole system alone does not create a constitutionally protected interest. *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *see Rodgers v. Parole Agent SCI-Frackville*, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996) (noting that Pennsylvania's parole statute does not create a liberty interest in the right to be paroled). Accordingly, the loss of an opportunity to attend a parole hearing does not equate to a liberty

---

[2] The Amended Complaint did not repeat Hill's allegation that his discipline "was racially and discriminatory motivated," so it appears that Hill has abandoned any equal protection claim. (Compl. ECF No. 2, at 8, ¶ 22.)

7

interest. Likewise, a prisoner does not "have an independent due process liberty interest in his prerelease status and associated transfer."[3] *Powell v. Weiss*, 757 F.3d 338, 344 (3d Cir. 2014).

As previously explained, Hill's loss of his referee position does not trigger due process protection because inmates do not have a liberty or property interest in a prison job. *See Watson v. Sec'y Pennsylvania Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (per curiam) ("Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection." (citing *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989))). Nor is Hill's thirty-day sentence in disciplinary custody sufficient to trigger due process protections. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) ("[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest [for purpose of triggering due process protection]." (quoting *Sandin*, 515 U.S. 472 (1995))); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)).

Furthermore, Hill cannot state a due process claim based solely on the filing of an allegedly false misconduct report. *See Smith*, 293 F.3d at 653; *see also Banks v. Rozum*, 639 F. App'x 778, 782 (3d Cir. 2016) (per curiam) ("[N]o due process violation arose from the misconduct charge that Banks received after prison officials said he had tampered with his radio, even though Banks alleges that the charge was based on false information"); *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (per curiam) ("With respect to Seville's claim that his due process rights were violated, the filing of a fraudulent misconduct report and related

---

[3] Hill's additional allegations that the note in his disciplinary file could affect future custody status and privileges speculative.

disciplinary sanctions do not without more violate due process."). In any event, Hill received opportunities to challenge and confront the false report, which is all he would have been entitled to from a procedural standpoint. *Smith*, 293 F.3d at 654 ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."); *see also Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam) ("Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."). Accordingly, Hill has not stated a basis for a due process violation.

## IV. CONCLUSION

The Court will dismiss the Amended Complaint for the reasons above. Hill will not be given another opportunity to amend because it appears that further efforts at amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002). An appropriate Order follows.

**BY THE COURT:**

**/s/ Gerald Austin McHugh**

**United States District Judge**